IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ALVA CAMPBELL,                              :

    Petitioner,                          :
                                                   Case No. 2:05cv193
    vs.                                  :
                                             JUDGE WALTER HERBERT RICE

MARGARET BRADSHAW, WARDEN,   :

    Respondent.                          :

---

DECISION AND ENTRY OVERRULING PETITIONER'S OBJECTIONS
(DOC. #73) TO REPORT AND RECOMMENDATIONS OF THE
MAGISTRATE JUDGE ON REMAND (DOC. #72); CERTIFICATE OF
APPEALABILITY TO BE GRANTED IN PART AND DENIED IN PART;
PETITIONER GIVEN LEAVE TO APPEAL IN FORMA PAUPERIS;
JUDGMENT TO BE ENTERED IN FAVOR OF RESPONDENT AND
AGAINST PETITIONER; TERMINATION ENTRY

---

After he had murdered Charles Dials ("Dials"), a Franklin County, Ohio, Grand Jury indicted Petitioner Alva Campbell ("Petitioner" or "Campbell") for a number of crimes, including four counts of aggravated murder, each of which carried death penalty specifications. Thereafter, a jury convicted him of all charged offenses and, after the sentencing phase of the trial, recommended that he be sentenced to death. The trial judge concurred in the jury's recommendation and imposed a death sentence. Campbell then appealed his conviction and the imposition of the death penalty to the Ohio Supreme Court, which affirmed the

Petitioner's convictions, but vacated the imposition of the death penalty, because the trial court had failed to comply with the allocution provisions of Rule 32(A)(1) of the Ohio Rules of Criminal Procedure. See State v. Campbell, 90 Ohio St.3d 320, 738 N.E.2d 1178 (2000), cert. denied, 533 U.S. 956 (2001). Upon remand, the trial court once again imposed the death penalty on Petitioner, after having provided him the opportunity to speak. The Ohio Supreme Court subsequently affirmed the sentence imposed by the trial court. State v. Campbell, 95 Ohio St.3d 48, 765 N.E.2d 334 (2002).

In addition, the Petitioner filed a petition for post-conviction relief, under § 2953.21 of the Ohio Revised Code, in the Franklin County Common Pleas Court. That petition was denied without an evidentiary hearing. The Franklin County Court of Appeals affirmed, concluding that some of his claims were barred by the doctrine of res judicata and denying others on the merits. State v. Campbell, 2003 WL 22783857 (Ohio App. 2003). The Ohio Supreme Court denied his request for further review. State v. Campbell, 102 Ohio St.3d 1470, 809 N.E.2d 1158 (2004).

The Petitioner then initiated this action, seeking a writ of habeas corpus under 28 U.S.C. § 2254. In his Petition (Doc. #12), Campbell set forth 12 claims or grounds for relief, many of which contain sub-claims and even sub-sub claims. This matter was referred to United States Magistrate Judge Michael Merz for a report and recommendations. That judicial officer, with the agreement of the Respondent, granted Petitioner leave to amend his Petition, in order to add sub-claim 4 to Ground 1. See Doc. #23. Thereafter, Judge Merz filed his 117-page Report and Recommendations, recommending that this Court deny Campbell the

requested writ of habeas corpus. See Doc. #59. The Petitioner then filed Objections (Doc. #61) to the Report and Recommendations of the Magistrate Judge (Doc. #59), and the Respondent filed a Memorandum in Opposition (Doc. #64).

In its Decision of March 7, 2008 (Doc. #66), this Court overruled the Petitioner's Objections, except as they related to Ground 6, in which he asserted that the trial court had violated his rights under the Eighth Amendment, by preventing him from arguing voluntary intoxication as a mitigating factor during the sentencing phase of his trial. This Court concluded that the Petitioner had suffered a deprivation of his rights under the Eighth Amendment, a constitutional deprivation, as a result. However, rather than concluding that Campbell was entitled to a writ of habeas corpus, the Court remanded this matter to the Magistrate Judge for "a report and recommendations on the question of whether the trial judge's decision to prevent Campbell's counsel from arguing voluntary intoxication as a mitigating factor [having found such to be constitutional error] constituted prejudicial or harmless error, after having given the parties opportunity to brief the question." Doc. #66 at 51-52.

After the parties had briefed the issue on remand (see Docs. ##68-71), Judge Merz issued his Report and Recommendations on Remand (Doc. #72), recommending that this Court conclude that the denial of the right to argue that voluntary intoxication was a mitigating factor constituted harmless error. In particular, Judge Merz concluded that, given that the jury had heard evidence about Petitioner's dysfunctional family, that the Petitioner was an alcoholic in remission and that he had consumed a 40-ounce beer in the three hours before he

confessed, it is unlikely that jury would have declined to impose the death penalty, had it heard argument linking Petitioner's alcohol use on the day of the offense to other mitigating factors.  See Doc. #72 at 12-13.  Consequently, Judge Merz recommended that this Court find that preventing Petitioner's counsel from arguing that voluntary intoxication is a mitigating factor did not have "a substantial and injurious effect on the verdict" and that, therefore, the trial court's error was harmless.

The Petitioner has filed Objections (Doc. #73) to that judicial filing, which the parties have fully briefed.  See Petitioner's Objections (Doc. #73); Respondent's Memorandum in Opposition (Doc. #74); and Petitioner's Reply Memorandum (Doc. #75).  In addition, the Court has had the benefit of very enlightening oral argument from counsel.  The Court now rules those Objections, beginning its analysis by reviewing the standards that a federal court must apply when, in a habeas corpus proceeding, it decides whether a constitutional error was harmless, as opposed to being prejudicial.  However, before engaging in that analysis, it bears noting that the Sixth Circuit has indicated that a District Court must apply a de novo standard of review to the report and recommendations of a Magistrate Judge in a habeas corpus proceeding.  Flournoy v. Marshall, 842 F.2d 875 (6th Cir. 1988).  Accordingly, this Court reviews both Judge Merz's factual findings and his legal conclusions de novo.

In Brecht v. Abrahamson, 507 U.S. 619 (1993), the Supreme Court held that an error is harmless, unless "it 'had substantial and injurious effect or influence in determining the jury's verdict.'"  Id. at 631 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).  The Brecht standard calls for reversal

when the habeas court lacks a "fair assurance" that the outcome of a trial was not affected by error. Beck v. Haik, 377 F.3d 624 (6th Cir. 2004). Of course, "[w]hen the reviewing court has 'grave doubt' as to the harmlessness of an error, the writ should issue." Caldwell v. Bell, 288 F.3d 838, 842 (6th Cir. 2002). A "grave doubt" exists when "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." O'Neal v. McAninch, 513 U.S. 432, 435 (1995). See also Gray v. Moore, 520 F.3d 616, 625-26 (6th Cir.), cert. denied, 129 S.Ct. 216 (2008). In Wilson v. Mitchell, 498 F.3d 491, 502-03 (6th Cir. 2007), cert. denied, 129 S.Ct. 172 (2008), the Sixth Circuit noted that, in Fry v. Pliler, 551 U.S. 112 (2007), the Supreme Court had held that Brecht remains applicable in habeas actions, after the enactment of the AEDPA, because the Brecht standard subsumes the AEDPA standard, which is based upon Chapman v. California, 386 U.S. 18 (1967).[1]

In his Objections (Doc. #73), Campbell has set forth eleven numbered errors he believes Judge Merz made, which led that judicial officer to conclude that the trial court's error, preventing Petitioner's trial counsel from arguing that voluntary intoxication is a mitigating factor, was harmless. Of course, the issue before this Court is whether, after conducting a de novo review, this Court reaches the same ultimate conclusion as Judge Merz, regardless of whether this Court agrees or disagrees with every step of that judicial officer in his reasoning process.

---

[1] In Chapman, the Supreme Court held that the standard for determining whether a conviction must be set aside, in a direct appeal, because of federal constitutional error is whether the error "was harmless beyond a reasonable doubt." 386 U.S. at 24. In Brecht, the Court held that Chapman did not apply in habeas corpus proceedings.

Accordingly, this Court will focus on the parties' memoranda on remand (Docs. ##68-71), where they set forth their reasoning in support of and in opposition to the premise that the trial court's error was harmless, determining that issue de novo.

In his opening memorandum on remand, Petitioner argues that the trial court's error was not harmless, because "[g]rave doubts exist whether [the] error had a substantial influence on the jury's verdict." Doc. #69 at 4. According to Campbell, his alcohol consumption, before he murdered Dials, would have been a "compelling" fact in mitigation under the unique circumstances of his prosecution. Id. Petitioner has identified the following unique circumstances, to wit: that he was destined to become an alcoholic, as a result of being raised in a household of alcoholics; that he was crippled by alcohol dependence; that his alcohol abuse is connected to his surfacing rage; and that his alcohol consumption added to his dysfunctional and impulsive thought process. The Court now elaborates upon the "unique circumstances" identified by Petitioner.

First, Campbell argues that he was destined to become an alcoholic, because he was raised in a household full of alcoholics. Campbell's sister Gwen testified that their parents got drunk every weekend and that, while drunk, fought each other. Jeffrey Smalldon ("Smalldon"), Petitioner's mitigation psychologist, testified that Campbell's personality development was affected by the violent, alcoholic behavior from his parents. As a result of being subjected to his parents' behavior in his youth, Petitioner argues that the die was cast for him to become an alcoholic before he committed the offense in question.

Second, Petitioner argues that he was crippled by alcohol dependence. For instance, Campbell's sister Gwen testified that he abused alcohol as an adult. In addition, Smalldon told the jury about statements from Petitioner's ex-wife about his (Campbell's) drinking. In addition, Smalldon testified that Campbell's alcoholism had been in remission, while he had been incarcerated before murdering Dials, but that it ceased to be in remission when he drank beer while driving around Columbus with Dials in the latter's truck.

Third, Petitioner contends that alcohol connects his background to his surfacing rage. According to the Petitioner, he suffered a horrific childhood, which left him with simmering feelings of rage and hatred for his father. Campbell contends that those feelings came to the surface when he drank alcohol. Petitioner points out that, by preventing his counsel from arguing the mitigating factor of his voluntary intoxication to the jury, the trial court deprived counsel of the opportunity of making the compelling connection between his alcohol consumption and the evidence of his background. Unquestionably, Petitioner's background was awful. In its Decision after remand, the Ohio Supreme Court discussed Campbell's background:

> Campbell was born on April 30, 1948, one of six children raised in an abusive, loveless, amoral, and unstable environment. His parents got drunk every weekend. When drunk, they fought physically and verbally. Campbell's sister Gwendolyn testified that their father beat their mother viciously, "like he was in the [boxing] ring," while the children were forced to watch. He would also expel Campbell's mother from the house in cold weather and threaten to kill the children if they let her back in.
> Despite his father's threats, Campbell once tried to defend his mother from his father's abuse. According to Smalldon, Campbell experienced "tremendous feelings of powerlessness [and] helplessness" because he was unable to protect his mother from his father.
> Campbell's father also abused Campbell and the other children. He beat them severely, forbade them to have friends, and played cruel, bizarre

> games to frighten them. Campbell was especially close to his younger brother, Dennis, whom he took care of and tried to protect. The death of Dennis at age three was a traumatic experience for Campbell.
>
> The Campbell children received no affection, emotional support, or moral guidance from their parents. Campbell was encouraged to steal as early as age six or seven. Campbell stole to emulate his father, who bragged about stealing and praised Campbell for stealing without getting caught.
>
> Campbell's father sexually abused two of his four daughters. The rest of the family knew about the abuse. Campbell's father was eventually prosecuted and, in 1958, confined at the Lima State Hospital. In his allocution, Campbell asserted that, when he was eight years old, his father had sexually molested him also. However, Campbell had previously denied this when asked by Smalldon.
>
> When Campbell's father was removed from the household, Campbell was still unsupervised because his mother abused alcohol heavily. Campbell seldom attended school. When Campbell was eleven, he and the other children were taken from their mother.
>
> Over the ensuing six years, Campbell went through further instability, moving from placement to placement. Between 1959 and 1965, Campbell was placed in "two different residential treatment facilities in Pennsylvania, * * * nine separate detention center placements [and] * * * two different foster homes." Encouraged by his mother, he ran away every chance he got.

Campbell, 95 Ohio St.3d at 51-52, 765 N.E.2d at 339-40.

In addition, Smalldon testified that, when Campbell would drink, his thoughts would turn to his hatred of his father. Smalldon also testified about the rage and frustration Campbell felt as a result of the vicious abuse inflicted by his father and at having to watch helplessly as his father abused his mother and sisters. In response to Smalldon's inquiry, Campbell denied that the crimes he had committed, including murdering Dials, were triggered by his rage toward his father.

Fourth, this unique circumstance is predicated upon Petitioner's mental disorder and the impact of his consumption of alcohol on that disorder. Petitioner states that he has developed a mental disorder, as a result of being raised by parents who provided neither guidance nor a nurturing atmosphere. His impulsive

thought process is a feature of that mental disorder.  Petitioner contends that he committed the crimes when alcohol further impaired his dysfunctional thought process.  As Petitioner points out, Smalldon diagnosed him as suffering an anti-social personality disorder.  Smalldon also indicated that the characteristics of that mental disorder were present by the age of 15.  Smalldon also testified that the impulsive thought process was a feature of Campbell's mental disorder and that his past had a warping influence on his thought process, even when he was not drinking.  According to Campbell, he demonstrated his impulsive thought process by driving aimlessly in close proximity to the Franklin County Jail, after having just escaped from that facility and kidnaped Dials.

In sum, the Petitioner points out that his mitigation case was based upon two key elements, to wit: his awful upbringing and family life (i.e., the abuse he, his sisters and his mother suffered at the hands of his father; being raised by alcoholic parents who fought when they drank; and the lack of parental love and guidance in his youth); and his impulsive thought process.  If his counsel had been permitted to argue his voluntary intoxication to the jury during the penalty phase, he would been able to tie those two key elements to each other and to his voluntary intoxication.  Petitioner points out that, but for the trial court's error, his counsel could have argued that his (Campbell's) consumption of alcohol further impaired his impulsive thought process.  Moreover, he claims, if permitted, his counsel could have connected his client's voluntary intoxication to his background, by arguing that his deep-seated feelings of rage against his father were brought to the surface as a result of the consumption of alcohol.

Based upon the following, this Court is unable to agree with the Petitioner that the trial court's constitutional error, i.e., preventing his counsel from arguing voluntary intoxication as a mitigating factor, had a substantial and injurious effect or influence in determining the jury's verdict. Therefore, this Court concludes that the error was harmless, as opposed to being prejudicial.

As an initial matter, it bears emphasis that, during the sentencing phase of the trial, Petitioner's counsel was able to present evidence concerning his client's background and to argue that evidence to the jury. He was also permitted to argue about Petitioner's impulsive thought process. Thus, counsel was able to present arguments concerning the two most persuasive mitigating factors.

Moreover, an argument concerning the synergistic effect of Petitioner's consumption of 40 ounces of beer and his horrid, dysfunctional background would not have been persuasive. The evidence concerning the relationship between Petitioner's rage at his father and his consumption of alcohol was presented by Smalldon. During one of the many interviews that medical professional conducted with Campbell, the latter indicated to Smalldon that murdering Dials was not connected to the rage he felt toward his father. Thus, the jury would most likely not have been persuaded by the argument from Petitioner's counsel that his client was worthy of their compassion, because his actions flowed from an understandable rage that he felt toward his father, which resulted from the latter's abuse of Petitioner, his mother and his sisters, and which was triggered by his consumption of alcohol, given that Petitioner himself cast doubt on the last predicate for that argument. Additionally, if evidence of Petitioner's awful upbringing and background did not cause the jury to conclude that the prosecution

had failed to prove that the aggravating circumstances outweighed the mitigating factors and, thus, to impose a sentence other than death, it is unreasonable to assume that the argument concerning his consumption of alcohol on the fatal day would have sparked the jury's compassion, causing them to spare his life. Therefore, this Court essentially agrees with Judge Merz's ultimate reasoning as to why the trial court's constitutional error was harmless.

In addition, this Court, for similar reasons, is unable to conclude that preventing Petitioner's counsel from arguing that Campbell's consumption of 40 ounces of beer on the day in question increased his impulsive thought process had a substantial and injurious effect or influence in determining the jury's verdict.

Moreover, legal precedent in Ohio does not favor the Petitioner's position that the trial court's error was prejudicial, as opposed to being harmless. For instance, in its Opinion after remand, the Ohio Supreme Court indicated that Campbell's voluntary intoxication was weak mitigating factor. State v. Campbell, 95 Ohio St.3d 48, 51, 765 N.E.2d 334, 339 (2002). Indeed, the Ohio Supreme Court has frequently stated that voluntary intoxication is a weak mitigating factor. See e.g., State v. Turner, 105 Ohio St.3d 331, 346, 826 N.E.2d 266, 282 (2005); State v. Fitzpatrick, 102 Ohio St.3d 321, 338-39, 810 N.E.2d 927, 944 (2004); State v. Brown, 100 Ohio St.3d 51, 65, 796 N.E.2d 506, 520 (2003); State v. White, 82 Ohio St.3d 16, 28, 693 N.E.2d 772, 783 (1998); State v. Moore, 81 Ohio St.3d 22, 37, 689 N.E.2d 1, 15 (1998); State v. Dennis, 79 Ohio St.3d 421, 439, 683 N.E.2d 1096, 1111 (1997); State v. D'Ambrosio, 73 Ohio St.3d 141, 145, 652 N.E.2d 710, 714 (1995); State v. Carter, 72 Ohio St.3d 545, 561-62, 651 N.E.2d 965, 979 (1995).

Petitioner, in contrast, places primary reliance upon State v. Haight, 98 Ohio App.3d 639, 649 N.E.2d 294 (1994), a death penalty prosecution in which the appellate court discussed the role of alcohol addiction as a mitigating factor. Therein, the Franklin County Court of Appeals indicated, inter alia, that the three-judge panel, which had found Haight guilty and had imposed the death penalty upon him, because the aggravating circumstances outweighed the mitigating factors, had improperly limited the mitigating factors, when determining whether to impose the death penalty.[2] Of present particular importance, the Haight court noted that the defendant's abuse of alcohol and other substances, including glue and paint thinner, should have been considered as a mitigating factor by the three-judge panel, and that courts should note that alcoholism and alcohol dependence were accepted by the medical community as a disease. Since the Haight court did not discuss the weight that should be given to voluntary intoxication as a mitigating factor, this Court is not convinced by that decision that the trial court herein committed prejudicial error by unconstitutionally preventing Campbell's counsel from arguing voluntary intoxication to the jury as a mitigating factor.

Accordingly, this Court concludes that the trial court's constitutional error of preventing Petitioner's counsel from arguing voluntary intoxication as a mitigating factor did not have a "substantial and injurious effect or influence in determining the jury's verdict" (Brecht, supra) and that, therefore, such error was harmless.

---

[2]Before turning to its discussion of the weighing process, the Haight court had concluded that the defendant's conviction and sentence of death had to be vacated, because of ineffective assistance of counsel and, further, because the three-judge panel did not secure a valid waiver of the defendant's right to a jury trial.

Consequently, the Court overrules Petitioner's Objections (Doc. #73) to the Magistrate Judge's Report and Recommendations on Remand (Doc. #72).

Judge Merz recommended that this Court grant Campbell a certificate of appealability on Ground 6 of his Petition. The Respondent did not object to that recommendation, and this Court briefly sets forth its reasons for adopting same. The requirement for a certificate of appealability is found in 28 U.S.C. § 2253(c), which provides:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

In Slack v. McDaniel, 529 U.S. 473 (2000), the Supreme Court explained that an applicant for a certificate of appealability could make "a substantial showing of the denial of a constitutional right," as required by § 2253(c)(2), in accordance with the standard adopted in Barefoot v. Estelle, 463 U.S. 880 (1983). 529 U.S. at 483-84. Thus, the Slack Court explained that when the District Court has rejected a petitioner's constitutional claim on the merits, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional

claims debatable or wrong," before a certificate of appealability can issue. Id. at 484. Herein, this Court concludes that reasonable jurists could find debatable or wrong its resolution of the issue of whether the violation of Petitioner's Eighth Amendment rights was harmless. Therefore, the Court concludes that Campbell is entitled to a certificate of appealability on Ground 6.

Coupling that conclusion with the conclusions set forth in its Decision of March 7, 2008 (Doc. #66), this Court grants Campbell a certificate of appealability on sub-sub-claim 1.2 of Ground 1, sub-claim 1 of Ground 2, sub-claim 1 of Ground 4 and Ground 6. In addition, the Court grants him leave to appeal in forma pauperis.

Based upon the foregoing, the Court directs that judgment be entered in favor of the Respondent and against Petitioner.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

March 18, 2009

                                                  /s/ Walter Herbert Rice
                                                  WALTER HERBERT RICE, JUDGE
                                                  UNITED STATES DISTRICT COURT

Copies to:

Counsel of Record.